# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOSEPH LONGO, JUSTIN LONGO,
LOIS SPATZ, EAVEN SPATZ, RAINA
POMEROY, and MAXWELL NASSAR,
*individually and on behalf of all others*            CASE NO.: 8:20-CV-02651
*similarly situated*,

      Plaintiff(s),

v.

CAMPUS ADVANTAGE, INC.,

      Defendant.

_____/

## CAMPUS ADVANTAGE'S CORRECTED
## MOTION FOR SUMMARY JUDGMENT

Defendant CAMPUS ADVANTAGE, INC. ("Campus Advantage"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, move this Court for entry of an Order granting Summary Judgment in favor of Campus Advantage on Plaintiffs', JUSTIN LONGO, JOSEPH LONGO, EAVEN SPATZ, LOIS SPATZ, MAX NASSAR and RAINA POMEROY ("Plaintiffs") Amended Complaint [D.E. 43], submit the following Corrected Motion for Summary Judgment, and in support thereof, states as follows:

CASE NO.: 8:20-cv-02651

## STATEMENT OF DISPUTED FACTS ("SDF")

1.      Longo Plaintiffs admit they owe money to Northgate Lakes under the terms of the Longo Lease. Defense Exhibit[1] ("DEX") 9, Joseph Longo Deposition Transcript, p. 48:13-49:23; DEX 10, Shaunda Longo Deposition Transcript, p. 22:3-21.[2]

2.      There is no evidence Justin Longo removed all of his belongings to vacate the premises or turned in his keys to Northgate Lakes prior to July 31, 2020. DEX 8, Justin Longo Deposition Transcript, p. 58:7-19, 82:10-84:1.[3]

3.      There is no evidence Max Nassar or Raina Pomeroy demanded the amounts paid to The Verge between March 2020 and July 2020 to be returned to their possession.[4]

4.      Plaintiffs agree their respective Leases control. DEX 8, Justin Longo Depo., p. 39:2-11; DEX 11, Eaven Spatz Deposition Transcript, p. 8:16-19, 11:24-12; DEX 13, Max Nassar Deposition Transcript, p. 21:4-6.[5]

5.      Plaintiffs admit Campus Advantage did not breach the Lease. DEX 8, Justin Longo Depo., p. 51:18-52:4; DEX 9, Joseph Longo Depo., p. 26:23-27:4, 30:13-31:1; DEX 11, Eaven Spatz Depo., p. 83:25-84:20.[6]

---

[1] The exhibits cited in the Statement of *Disputed* Facts ("SDF") are attached to the Statement of *Undisputed* Facts [D.E. 98] ("SUF") filed contemporaneously with this Corrected Motion for Summary Judgment.
[2] Formerly Statement of Material Fact [D.E. 87] ¶4.
[3] Formerly Statement of Material Fact [D.E. 87] ¶5.
[4] Formerly Statement of Material Fact [D.E. 87] ¶11.
[5] Formerly Statement of Material Fact [D.E. 87] ¶21.
[6] Formerly Statement of Material Fact [D.E. 87] ¶23.

COLE, SCOTT & KISSANE, P.A.
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

6.     Plaintiffs also acknowledge that the closure or limitation of amenities was permitted under the Lease. DEX 8, Justin Longo Depo., p. 21:21-23, 47:5-23, 49:14-50:6; DEX 11, Eaven Spatz Depo., p. 25:5-26:16, 51:15-22; DEX 12, Lois Spatz Deposition Transcript, p. 68:1-14; DEX 13, Nassar Depo., p. 21:4-6.[7]

7.     Plaintiffs suggest that The Verge and Northgate Lakes could have kept the amenities open to residents while following social distancing guidelines. DEX 11, Eaven Spatz Depo., p. 15:8-16:4, 26:25-27:10; DEX 12, Lois Spatz Depo., p. 68:15-23; DEX 13, Nassar Depo., p. 55:23-57:4.[8]

8.     However, Plaintiffs also admit that their basis for this action is premised on "moral concerns" and not actual harms. DEX 8, Justin Longo Depo., p. 39:2-11; DEX 11, Eaven Spatz Depo., p. 35:21-24, 89:8-25, 92:11-93:8, 95:10-15; DEX 12, Lois Spatz Depo., p. 25:25-26:22, 28:20-11; DEX 14, Raina Pomeroy Deposition Transcript, p. 6:22-7:3.[9]

9.     Plaintiffs do not recall the number of debt collection communications they received or the impact it had on their daily lives. DEX 8, Justin Longo Depo. Tr., p. 88:22-89:18; DEX 9, Joseph Longo Depo., p. 101:12-102:2, DEX 11, Eaven Spatz Depo., p. 33:20-22, 67:10-21, 68:7-69:9; DEX 12, Lois Spatz Depo., p. 81:18-82:23, 83:12-23, 84:4-11.[10]

---

[7] Formerly Statement of Material Fact [D.E. 87] ¶24.
[8] Formerly Statement of Material Fact [D.E. 87] ¶25.
[9] Formerly Statement of Material Fact [D.E. 87] ¶27.
[10] Formerly Statement of Material Fact [D.E. 87] ¶28.

## MOTION FOR SMMARY JUDGMENT

## MEMORANDUM OF LAW

### I.    Legal Standard

"The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F.Supp.2d 1315, 1322 (M.D.Fla. 2002), *aff'd sub nom.*, 88 F.App'x 389 (11th Cir. 2003). "A moving party discharges its burden on a motion for summary judgment by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

"The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no **genuine** issue of **material** fact." *Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F.Supp.3d 1295, 1303 (M.D.Fla. 2017) (internal quotation omitted) (emphasis in original). "[A]n issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case, and an issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Id.*

"If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of

4

law." *Auto-Owners Ins. Co. v. Noble*, 2019 WL 4671139, at *2 (M.D.Fla. 2019). "To satisfy its burden, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.*

## II.  Threshold Issues

### A.  The Lease Controls

"Under Florida law, the construction and interpretation of an unambiguous written contract is a matter of law for the court and is therefore properly subject to disposition by summary judgment." *Ellenwood v. World Triathlon Corp.*, 2021 WL 62482, *2 (M.D.Fla. Jan. 7, 2021).[11] "It is well settled that the actual language used in the contract is the '**best evidence of the intent of the parties and, thus, the plain meaning of that language controls**.'" *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F.Supp.2d 1315, 1323 (M.D.Fla. 2002) (emphasis added). In light of the well-established law above, the Lease Agreement controls this dispute. Critically, Plaintiffs concede the same. SUF, ¶17. Thus, this Court should apply the terms of the Lease in its consideration of this Motion and case.

### B.  Plaintiffs Have Incurred No Harm In This Matter.

---

[11] "Florida law is clear that courts are not permitted to 'rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.'" *Ellenwood v. World Triathlon Corp.*, 2021 WL 62482, *2 (M.D.Fla. 2021). "Under Florida law, a 'court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties.'" *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, 2014 WL 4162787, at *13 (M.D.Fla. 2014).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Plaintiffs have testified that they have not suffered any harm as it relates to the claims presented in this case. SDF¶5. Plaintiffs also testified that the debt collection communications they received did not have any genuine impact on how Plaintiffs conducted their lives. SDF¶9. Moreover, Plaintiffs have consistently maintained that they have pursued this action for "moral" purposes. SUF¶27. Accordingly, as it pertains to the relief requested by Plaintiffs, there is no evidence that Plaintiffs were actually harmed to maintain a cause of action. *See Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest").

### C.     The Amenities Provision Excuses Any Alleged Wrongdoing

Notwithstanding, and after reading SOF above regarding the provision of amenities, Plaintiffs fail to demonstrate Campus Advantage violated the terms of the Lease. SUF¶¶9-10, 14, 17, SDF¶4. Regardless, "[i]t is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain." *Larsen v. AirTran Airways, Inc.*, 2009 WL 1076035, at *10 (M.D.Fla. 2009). Accordingly, the Amenities Provision of the Lease controls.

### III.     Claim for Rescission is Overcome by Terms of Lease – COUNT I

"In order for the remedy of rescission to be granted, however, **the parties must be able to be restored to their original positions**." *Yanks v. Truly Nolen, Inc.*, 341 So.2d 829, 832 (Fla.3d DCA 1977) (emphasis added).

The fundamental requirements necessary to state a cause of action for rescission of contract are: (1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party to the contract of such rescission; (5) the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law.

*Id.* "It is **the facts of each individual case that must support the remedy of rescission**[.]" *Id.* (emphasis added).

Irrespective of whether performance is impossible or the purpose frustrated, **the defenses are usually not available "if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express contractual agreement."** *Home Design Ctr.*, 563 So. 2d at 769. "As a general rule, a contract is not invalid, nor is the obligor discharged from its binding effect, **because the contract turns out to be difficult or burdensome to perform**." *Id.* at 769-70

*In re Cinemex USA Real Est. Holdings, Inc.*, 627 B.R. 693, 697–98 (Bankr.S.D. Fla. 2021) (applying Florida law) (emphases added). "The doctrine of impossibility of performance should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express provision of the agreement." *Ashraf v. Swire Pac. Holdings, Inc.*, 752 F.Supp.2d 1266, 1270 (S.D.Fla. 2009) (applying Florida law).

On the other hand, "[f]rustration of purpose applies where one of the contracting parties finds that the purpose for which it bargained, and which purposes were known to the other party, have been frustrated because of failure of

consideration or the impossibility of performance by the other party." *Amoco Oil Co. v. Gomez*, 125 F.Supp.2d 492, 505 (S.D. Fla. 2000) (applying Florida law).

Here, the Parties agree the Lease governs the relationship between them. SDF¶4. The Parties also agree that the Leases are evidence by a signed writing. SUF¶¶2, 5, 7. However, as grounds for rescission, Plaintiffs explain that the "fundamental purpose" of the Leases was to allow residents a place to reside while attending in-person classes on campus as well as use of the amenities included. SUF¶18. In other words, Plaintiffs' "purpose" regarding the Leases was to have a place to live while attending classes on campus. The Lease provides that the premises are for "residential purposes only." SUF¶13.  Incidental purposes, or secondary purposes, do not over come the mutually agreed, essential purpose of a contract. The Lease specifically contemplates the issues that would arise if a resident ceased to be enrolled or could not continue occupancy of the premises "for any other reason." SUF¶10.

As to impossibility of performance, Plaintiffs allege Campus Advantage was obligated to provide residents with access to common areas and amenities but because of the safety risks associated with COVID-19, as well as the inability to control the actions of roommates or other residents, it was not possible for residents to use the same in a prudent manner. SUF¶1, A.C. ¶106. First, the Lease specifically provides Landlord with the discretion to limit access to the amenities and further limit persons from congregating. SUF¶¶14-16. Second, limited access

to amenities provided by Landlord does not constitute a proper ground for rescission, where the contract becomes difficult to perform.  Accordingly, as a matter of law, Plaintiffs cannot establish a claim for recission.

## IV.    Plaintiffs' Claim for Breach of Contract Is Overcome by Terms of Lease —COUNT II

For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Reyes v. Foreclosure Asset Sales & Transfer P'ship*, 2014 WL 12623071, at *6 (S.D.Fla. 2014) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). "The construction of a contract is a question of law for the courts to determine where the language used in the written contract is clear, unambiguous, and susceptible of only one interpretation." *Reyes*, at *6 (quoting *Gray v. D & J Indus., Inc.*, 875 So.2d 683, 683 (Fla.3d DCA 2004)).

Here, Plaintiffs allege Campus Advantage breaches paragraphs 1 and 38 of the Lease by failing to "safely provide these services and amenities." SUF ¶1, A.C. ¶115. First, as to paragraph 1, Plaintiffs held a non-exclusive right to the use and enjoyment of the shared living areas within the suite. SUF¶9. To this end, the issue of "safety" relates to the inability to control the actions of an individual's roommates. SUF¶19. Any issue regarding interactions between roommates depends on the roommates themselves to resolve the problem—not Campus Advantage. Plaintiffs seek to impose a heightened duty of care on Campus

Advantage to police their residents to succeed on a claim for breach of contract, which is wholly inappropriate.

As to the amenities made available to residents, paragraph 38 merely reiterates the same. SUF¶16. A plain reading of this provision does not reasonably read that the landlord is precluded from closing or limiting the amenities. Moreover, there are other provisions that refute Plaintiffs' claim. Paragraph 4 expressly states that the Landlord has the full discretion to promulgate rules related to the amenities. SUF¶14. Plaintiffs admitted the same. SDF¶5. Furthermore, the end of the Rules and Regulations Addendum to the Lease provides that the Landlord has the discretion to adopt new rules. SUF¶17. Plaintiffs' alternative suggestions that Campus Advantage should have ***kept the amenities open*** while still maintaining social distancing guidelines is an absurd position in light of the claims in this case and fails to square with their pleading and theories. SDF¶7.

Finally, there is no allegation related to the damages Plaintiffs' incurred as a result of Campus Advantage's alleged breach of contract. SUF¶1, A.C. p. 21.

## V.      No Relevant Lease Terms Demonstrate Breach of Implied Covenant of Good Faith and Fair Dealing—COUNT III

"Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). "The implied covenant of good faith 'is a gap filling default rule' which comes into play when a question is not resolved by the terms of the contract or

when one party has the power to make a discretionary decision without defined standards." *Degutis v. Fin. Freedom, LLC*, 978 F.Supp.2d 1243, 1263 (M.D.Fla. 2013) (applying Florida law) (internal quotation omitted). "This rule was developed in the contract arena and is aimed at **protecting the reasonable or justifiable expectations** of the contracting parties in light of their express agreement." *Shibata v. Lim*, 133 F.Supp.2d 1311, 1318 (M.D.Fla. 2000) (emphasis added). The "duty of good faith must relate to the performance of an express term of the contract and **is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements**." *Cibran v. BP Prod. N. Am., Inc.*, 375 F.Supp.2d 1355, 1359 (S.D.Fla. 2005) (applying Florida law) (emphasis added) (internal quotations omitted). "Where a party to a contract has in good faith performed the express terms of the contract, an action for breach of the implied covenant of good faith will not lie." *Cibran*, 375 F.Supp.2d at 1360.

Plaintiffs allege three breached warranties, none of which are related to any identifiable Lease provision: (1) remaining on the premises was a reasonable option for class members; (2) representing to serve as private dormitories and provide resident life programs to compliment students' academics; and (3) failing to refund any monies paid by Plaintiffs that remain unused. SUF¶1, A.C. p. 22.

First, Plaintiffs' claim fails as a matter of law—as none of the alleged "warranties breached" relate to any specific contractual provisions of the Lease.

*See Cibran*, 375 F.Supp.2d at 1360. Second, the assumption that residents could not practice safe social distancing in compliance with CDC guidelines is unsupported by any evidence. Notably, this leads to the argument about Campus Advantage's ability to control the actions of an individual's roommate in order to ensure the safety of potential class members. This argument imposes an improper heightened duty on Campus Advantage, not only to provide residential accommodations, but to unconditionally guaranty the health and safety of each resident. Third, the evidence shows that remaining on the premises while complying with social distancing guidelines was reasonably feasible. Each Named Plaintiff had their own room and access to a bathroom shared with another individual. SUF¶9. The only places of issue would be the kitchen and common areas, where the number of individuals permitted to congregate had already been limited by Campus Advantage before the CDC guidelines had even been considered. SUF¶15.

Second, there is no mention of "resident life programs" in the Lease, nor any provision demonstrating resident entitlement to the same.  The mere fact that The Verge and Northgate Lakes advertise to students does not make their conduct limiting the amenities into wrongful misconduct. Moreover, the idea that these particular residents "had no reason to stay" due to campus closures ignores the needs or living situations of other student and non-student residents as well as the valid, enforceable Lease Plaintiffs executed.

Third, Plaintiffs' claim that Campus Advantage has breach an implied warranty of good faith and fair dealing in failing to return any monies paid by Plaintiffs is overcome by the clear Lease provisions stating that rent was due for the entire lease term and there would be no proration for any partial month. SUF¶¶11-12.

## VI.       Plaintiffs Cannot Demonstrate a Claim for Unjust Enrichment—COUNT IV

"A claim for unjust enrichment is equitable in nature, and thus, is not available when there is an adequate legal remedy." *Reliastar Life Ins. Co. v. Kiel*, 2010 WL 11507705, at *3 (M.D.Fla. 2010).

> In Florida, the essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that made it inequitable for him to retain it without paying the value thereof.

*William Ryan Homes Fla., Inc. v. Whitney Nat. Bank*, 2012 WL 4328769, at *4 (M.D.Fla. 2012). Where there is a valid contract between the parties and the instant dispute arises from this contractual relationship, the plaintiff could not assert a claim for unjust enrichment. *See id*. at *4.

"As to the first element, the plaintiff must show it directly conferred a benefit on the defendant." *Omnipol, a.S. v. Worrell*, 421 F.Supp.3d 1321, 1348 (M.D.Fla. 2019) (internal quotation marks omitted). "Accordingly, '[i]t is not enough to show that the defendant obtained a benefit and that the plaintiff was in some roundabout way damaged.'" *Id*.

> Additionally, a claim for unjust enrichment should be premised on circumstances under which **it would be inequitable for the defendant to retain the benefit without paying for it**. *State v. Tenet Health Care Corp.*, 420 F.Supp.2d 1288, 1309 (S.D. Fla. 2005). Liability in unjust enrichment has in principle **nothing to do with fault**. *Tenet* at 1309. The paradigm examples of unjust enrichment are mistaken transfers. *Id.* Where a plaintiff predicates their unjust enrichment claim on the **wrongful conduct of a defendant**, then the plaintiff's right of recovery, if any**, arises from the wrong of the alleged tort rather than unjust enrichment**. *See id.*

*Tilton v. Playboy Ent. Grp., Inc.*, 2007 WL 80858, at *3 (M.D.Fla. 2007) (emphases added).

Here, the element at issue is whether Campus Advantage's retention of money paid by Plaintiffs under the circumstances is inequitable without Campus Advantage paying value to Plaintiffs. *See William Ryan Homes Fla., Inc.*, 2012 WL 4328769, at *4. Plaintiffs claim the inequitable circumstances that merit reimbursement are: (1) university and college campus closures; (2) social distancing recommendations and guidelines; and (3) students were ordered to leave campus and return to the homes of their parents. SUF¶1, A.C. ¶¶122-25.

First, the Lease specifically contemplated the issue of whether a resident no longer occupies the leased premises for whatever reason and still requires payment for the full lease term. SUF¶¶10-11. Pursuant to the Lease, the incidental purpose of "attending classes on campus" does not overcome the clear provision that the Leases are for residential purposes only. SUF¶13.

Second, there is nothing in the proposed social distancing guidelines that required a resident to break his or her respective Lease agreement.

Third, there is no evidence that students residing off-campus were ordered by the University of Central Florida or Orange County, to vacate their residences, break their respective leases and return to the homes of their parents. SUF¶22. The UCF Alert Email merely provides that no students should attempt to return to campus, there is nothing to suggest a clear directive to breach a valid contract. *Id.*

## VII.   Plaintiffs Cannot Demonstrate a Claim for Conversion of Money—COUNT V

"It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla.3d DCA 2008).

"Conversion is defined as 'an act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property.'" *Frayman v. Douglas Elliman Realty, LLC*, 515 F.Supp.3d 1262, 1285 (S.D.Fla. 2021) (quoting *Joseph v. Chanin*, 940 So.2d 483, 486 (Fla.4th DCA 2006)). "In Florida, the mere obligation to pay money many not be enforced by a conversion action." *Frayman*, 515 F.Supp.3d at 1285 (internal quotation omitted). "For a plaintiff to succeed on a claim of conversion of money, 'the ... conversion must go beyond, and be independent from, a failure to comply with the terms of a contract.'" *Id.* (quoting *Gasparini*, 972 So.2d at 1055).

"The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made." *Goodrich v. Malowney*, 157 So.2d 829, 832 (Fla. 2d DCA 1963). ... "**A conversion occurs when a person who has a right**

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

**to possession of property demands its return and the demand is not or cannot be met.**" *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So.2d 501, 503 (Fla. 2d DCA 1985).

*IberiaBank v. Coconut 41, LLC*, 984 F.Supp.2d 1283, 1308 (M.D.Fla. 2013), *aff'd*, 589 F.App'x 479 (11th Cir. 2014) (emphasis added).

First, as the issue before the Court on Count IV regards a simple debt which can be discharged by the payment of money, Plaintiffs' claim for conversion fails at the outset. Second, there is no issue as to a wrongful act of dominion inconsistent with Plaintiffs' possessory rights in personal property. *See Frayman*, 515 F.Supp.3d at 1285. The payment of money to Campus Advantage was carried out under the terms of the Leases and for no other reasons. SUF¶¶8, 20. Finally, there is no evidence any demand was made for the return of these funds.

## VIII.    Plaintiffs Cannot Demonstrate a Claim for Money Had and Received—COUNT VI

"Florida law recognizes the general rule that 'an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage.'" *Craig v. Kropp*, 2017 WL 2506386, at *7 (M.D.Fla. 2017) (quoting *Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361, 1370 (S.D.Fla. 2007)). Additionally, "plaintiff cannot pursue an action for money had and received when there is an express contract." *Voltage Pay Inc. v. Turin Consulting LLC*, 2013 WL 12205710, at *3 (M.D.Fla. 2013). The rationale provides, "**in the absence of evidence of some express specific**

**agreement**, the law will assume that one who receives and holds money that belongs to another has impliedly assumed the obligation of returning it and is, accordingly, in law indebted to the owner for it." *Berry*, 497 F. Supp. 2d at 1370 (emphasis added) (applying Florida law).

First, Plaintiff Nassar admitted he made his payments in compliance with the terms of the Nassar Lease. SUF¶8. Plaintiffs Longo and Spatz similarly admit they made payments to Northgate Lakes and The Verge, respectively, in March, before they had decided whether to vacate the premises. SUF¶20. There is no allegation that the monies paid to Campus Advantage in rental payments was paid due to a mistake of fact. Second, the Parties' respective Leases control the terms of payment to Campus Advantage. There is no evidence that these payments were made under any threat of extortion, fraud or similar method of wrongfully obtaining payment.

## IX.  Plaintiffs Cannot Demonstrate Violation of the Florida Consumer Collection Practices Act—COUNT VII

Pursuant to Section 559.72(7), Florida Statutes, an individual shall not willfully engage in conduct which could reasonably be expected to abuse or harass the debtor or any member of his or her family. *See* §559.72(7), Fla. Stat. Section 559.72(7) questions whether conduct is harassing or abusive, which is typically an issue for the factfinder. *See McCaskill v. Navient Solutions, Inc.*, 178 F.Supp.3d 1281, 1296 (M.D.Fla. 2016). "However, courts will grant summary judgment where a plaintiff rests on the number of phone calls without other evidence of harassing

conduct." *McCaskill*, 178 F.Supp.3d at 1296. *See also Pucci v. Specialized Loan Servicing, LLC*, No. 3:14-CV-1236-J-32MCR, 2017 WL 11633015, at *5 (M.D.Fla. 2017).

Separately, Section 559.72(9) refers to the debt collector's actual knowledge of the legal right to the debt:

> Section 559.72(9) provides: "[i]n collecting consumer debts, no person shall: (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some legal right when such person knows the right does not exist." Fla. Stat. § 559.72(9). This section "requires by its terms actual knowledge." *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1337 (M.D. Fla. 2010) (emphasis in original).

*Pucci*, at *5.

Spatz Plaintiffs testified that the limited debt collection communications did not have any real impact on their daily lives. SDF¶9. Aside from general assertions related to the telephone calls received, Plaintiffs do not have any evidence to demonstrate any intent on behalf of Campus Advantage to willfully engage in conduct that could be reasonably expected to harass the debtor or member of debtor's family.

As to Section 559.72(9), Plaintiffs have failed to demonstrate Campus Advantage had actual knowledge that the debt sought was not legitimate. The Lease explicitly provides that the amount for the entire lease term is due. SUF¶¶9-11. The fact that Plaintiffs are currently disputing the debt does not make the debt illegitimate for the purposes of subsection 9.

**X.      Spatz Plaintiffs Cannot Demonstrate Violation of the Florida Consumer Collection Practices Act—COUNT X**

"Section 559.72(18) prohibits communicating directly with a debtor only 'if the person *knows* that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address.' Fla. Stat. § 559.72(18) (emphasis added)." *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1337 (M.D.Fla. 2010). "Actual knowledge is required to prove violations of Fla. Stat. § 559.72(18)." *Bray v. PNC Bank, N.A.*, 196 F.Supp.3d 1282, 1287 (M.D.Fla. 2016) (internal quotations omitted).

Lois Spatz alleges that on the singular occasion that she answered a debt collection phone call, she informed the debt collector that she had contacted an attorney but does not recall when this occurred. SUF¶21. Additionally, Spatz Plaintiffs received two letters from BYL Collections regarding the outstanding debt. Otherwise, however, there is no record of any direct communications to Campus Advantage about Plaintiffs being represented by Counsel in connection with the debt. Lois Spatz also alleges that she received a telephone call from a debt collector and informed them she was represented by counsel. SUF¶21. Lois Spatz, however, does not have any evidence of this phone call or when it occurred. *Id.* Merely self-serving claims without evidence are insufficient to survive summary judgment. There is no evidence to support Spatz Plaintiffs' claim under 559.72(18).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

**WHEREFORE**, and for the reasons set forth above, Defendant Campus Advantage, Inc., respectfully request that this Court grant this Motion for Summary Judgment in its entirety as outlined above and grant any other relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 27th day of January, 2022, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CAMPUS ADVANTAGE, INC.*
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9222
Facsimile (561) 683-8977
E-mail: jonathan.vine@csklegal.com
E-mail: justin.levine@csklegal.com
E-mail: katherine.herald@csklegal.com

By:  */s/Katherine E. Herald*
JONATHAN VINE
Florida Bar No.: 10966
JUSTIN B. LEVINE
Florida Bar No.:  106463
KATHERINE E. HERALD
Florida Bar No.: 1022362