UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH LONGO, JUSTIN LONGO,
LOIS SPATZ, EAVEN SPATZ, RAINA
POMEROY, and MAXWELL NASSAR,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.                            Case No: 8:20-cv-2651-KKM-TGW

CAMPUS ADVANTAGE, INC.,

       Defendant.
_____

## ORDER

Plaintiffs Joseph Longo, Justin Longo, Lois Spatz, Eaven Spatz, Raina Pomeroy, and Maxwell Nasar, on behalf of themselves and all others similarly situated, sued Campus Advantage, Inc.,[1] a private company that provides off-campus, residential housing to college students around the country, alleging a variety of claims rooted in Campus Advantage's refusal to release them from their lease obligations after the onset of COVID-19. Plaintiffs are tenants (and their parents) who lived at a Campus Advantage residential student housing facility near the University of Central Florida (UCF) during the 2019–

---

[1] Plaintiffs also sued BYL Collection Services, LLC, but have since voluntarily dismissed BYL from the action. (Doc. 82; Doc. 86.)

2020 academic year. Campus Advantage moves to dismiss the Plaintiffs' claims based on the lease agreements, which it argues remained enforceable despite the onset of the COVID-19 pandemic. (Doc. 43.) The students also move for class certification. (Doc. 69.)

The Court grants Campus Advantage's motion to dismiss in its entirety. Plaintiffs' claims either fail to meet the pleading standards or fail due to the undisputed existence of valid lease agreements between the parties. As a general matter, the lease agreements never conditioned Campus Advantage's private student housing facilities on the nearby college's administrative decisions. It is the terms of the leases—rather than the decisions of nearby university administrators—that govern the legal obligations of these parties. Therefore, the Court grants Campus Advantage's motion to dismiss and denies as moot the motion for class certification.

## I.   BACKGROUND

### A. Facts[2]

In their Amended Complaint, Plaintiffs allege that Campus Advantage, Inc., a Texas corporation, is "one of the largest property managers for private dormitory housing" in the country. (Doc. 34 ¶ 1.) Campus Advantage's facilities seek to provide a "college dormitory life" for residents, which includes multi-bedroom apartments, often with shared bathrooms, and various amenities such as organized social events through the residence life

---

[2] At this stage, the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to Plaintiffs. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

program, shuttle services to the campus, swimming pools, game rooms, fitness centers, golf simulators, 24-hour coffee bars, and more. (*Id.* ¶¶ 1, 18.) Campus Advantage has eight properties near college campuses in Florida. (*Id.* ¶ 16.) These properties include two private, off-campus residential student housing facilities located near UCF: The Verge and Northgate Lakes. (*Id.* ¶ 15.)

The named Plaintiffs in this action include Joseph Longo and his son Justin Longo. Justin signed a lease agreement (which his father co-signed) for a room at Northgate Lakes for the 2019–2020 academic year; Eaven Spatz signed a lease agreement (which his mother Lois Spatz co-signed) for a room at The Verge for the 2019–2020 academic year; Maxwell Nassar also signed a lease agreement (which his mother Raina Pomeroy co-signed) for a room at The Verge for the Fall 2019-Spring 2020 academic year. (*Id.* ¶¶ 5–7.)

In early March 2020, the COVID-19 pandemic struck the United States, prompting both the federal government and the State of Florida to declare states of emergency. (*Id.* ¶¶ 49–50.) By March 17, all the public universities and colleges in Florida announced that classes would transition to remote learning through the end of the Spring 2020 semester and that all on-campus events were canceled due to COVID-19. (*Id.* ¶ 52.)

The Florida universities encouraged students who lived on campus to move out of their dormitories and "agreed to return a fair portion of the students' room and board." (*Id.* ¶¶ 53, 59.) On April 3, 2020, following approval by the board of trustees, UCF began

3

"issuing housing refunds for a portion of the spring semester's rent to resident's that were not able to return to campus or have left their rooms." (*Id.* ¶ 68.) UCF urged the surrounding private housing companies to do the same. (*Id.* ¶ 69.) But Campus Advantage elected a different course.

Rather than allowing its residents to break their leases and returning "a fair portion" of the already-paid rent like the Florida universities, Campus Advantage "refused to return any portion of the room, board, and other fees" to the residents and "continue[d] to actively collect" rent payments from its residents during the pandemic. (Doc. 34 ¶¶ 57, 60.) As Campus Advantage's UCF Resident Director put it in a mass email to the residents, COVID-19 is "outside of our control, and while we realize that you and your family may be facing uncertainty with employment or source of income, which can result in challenges making rent payments, *we are not able to release residents from lease obligations at this time.*" (*Id.* ¶ 63 (emphasis added).) While Campus Advantage continued to demand that the residents fully honor the rent payments they had agreed to in their leases, Campus Advantage closed or limited the residents' access to the various on-site amenities (e.g., swimming pools, game rooms, fitness centers, etc.) for safety reasons related to COVID-19. (*Id.* ¶ 101.)

On April 6, 2020, the Longos advised Campus Advantage that Justin (student) had moved out and that the Longo parents had lost their jobs and could no longer pay his rent.

Campus Advantage responded that it would continue to collect rent and that "many people are in the same position" as the Longos. (*Id.* ¶ 70.) On April 13, 2020, Lois Spatz informed Campus Advantage that her son Eaven had moved out and "requested to be released from the lease[,] or, in the alternative, to apply lease credits to a future lease." (*Id.* ¶ 72.) Campus Advantage refused, citing the policy decisions made by "upper management at our corporate office." (*Id.* ¶ 73 (emphasis omitted).) Both the Longos and the Spatzs paid rent for March but not for April, May, and June, which they claim they do not owe to Campus Advantage. (*Id.* ¶¶ 26, 42.) They further allege that Campus Advantage is improperly retaining part of their March rent, despite not providing the bargained-for amenities during that time due to COVID-19 safety concerns. (*Id.* ¶¶ 27, 43.)

Maxwell Nassar, the third student Plaintiff, paid rent through July when his lease ended. (*Id.* ¶¶ 46–47.) Additionally, Nassar and his mother (Pomeroy) claim Campus Advantage has continually refused to return the money they paid for the second part of March through July, despite not providing the bargained-for amenities during that time. (*Id.* ¶ 48.)

## B. Procedural History

Plaintiffs Amended Complaint asserts eleven causes of action against Campus Advantage and BYL Collection Services. (Doc. 34.) After Plaintiffs settled with BYL Collection Services and stipulated to its dismissal from this action, (Doc 76; Doc. 86), only

the eight counts asserted against Campus Advantage remain in the action—seven counts by all Plaintiffs and one separately by only the Spatz Plaintiffs. (Doc. 34.) In their Amended Complaint, all Plaintiffs, individually and on behalf of a proposed class, assert seven claims against Campus Advantage: (1) rescission (Count I); (2) breach of contract (Count II); (3) implied covenant of good faith and fair dealing (Count III); (4) unjust enrichment (Count IV); (5) conversion (Count V); (6) money had and received (Count VI); and (7) a Florida Consumer Collection Practices Act (FCCPA) claim (Count VII). (Doc. 34.) Separately, the Spatz Plaintiffs, individually and on behalf of a proposed subclass, raise one claim against Campus Advantage under the FCCPA (Count X). (*Id.*)

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 679. When reviewing a motion to dismiss, courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

The Court may consider documents attached to a motion to dismiss "without converting the motion into one for summary judgment if they are central to the plaintiff's claim and their authenticity is not challenged." *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Campus Advantage requests that the Court consider the lease agreements between Plaintiffs and Campus Advantage. (Doc. 43 at 5–6; Doc. 43-1; Doc. 43-2; Doc. 43-3.) Because the existence and validity of the lease agreements are central to Plaintiffs' claims and the authenticity of the lease agreements is undisputed, the Court will consider them along with Plaintiffs' complaint.

## III.   ANALYSIS

Campus Advantage moves to dismiss all counts in the Amended Complaint. (Doc. 43.) The Court addresses each count in turn.

### A. Count I: Rescission

"Rescission is an equitable remedy with the purpose of restoring the former status of the parties by undoing the original transaction." *See Rost Invs., LLC v. Cameron*, 302

So. 3d 445, 449 (Fla. 2d DCA 2020) (cleaned up) (quoting *Billian v. Mobil Corp.*, 710 So. 2d 984, 990 (Fla. 4th DCA 1998)). Under Florida law, to state a claim for rescission of contract, the required elements are: "(1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party"; "(5) the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law." *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002) (Kovachevich, J.) (citing *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965)). "Equity will not usually order rescission unless the condition of the parties may be restored as it existed prior to the execution of the contract." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen and Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995).

The first two rescission elements are not at issue. Plaintiffs allege that they are in privity of contract with Campus Advantage (element one) and that valid contracts—the lease agreements—exist between them (element two). *See Bland*, 206 F. Supp. 2d at 1206 ("In order to maintain an action for rescission of contract, the parties to the lawsuit must lie in contractual privity.").

The third element is "the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation." *Id.* As to this element, Defendants argue that Plaintiffs fail to allege that the respective leases are invalid, such that rescission is not warranted. (Doc. 43 at 8–9.) Plaintiffs counter that they "expressly plead[]" both impossibility of performance and frustration of purpose "throughout the [C]omplaint." (Doc. 51 at 6.)

The Court concludes that Plaintiffs did not sufficiently plead grounds for rescission in their Amended Complaint. Impossibility of performance and frustration of purpose are separate and distinct grounds for rescission. *See Crown Ice*, 174 So. 2d at 617–18 ("These two theories of 'impossibility of performance' or 'frustration of purpose,' while theoretically distinct, are often confused by the courts and textbook writers in applying them."). "'Impossibility of performance' refers to those factual situations where purposes for which the contract was made, have, on one side, become impossible to perform." *Bland*, 206 F. Supp. 2d at 1208 (quoting *Crown Ice*, 174 So. 2d at 617). "'Frustration of purpose' refers to the condition surrounding the contracting parties where one of the parties finds that the purposes for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance of the other party." *Id.*

Here, Plaintiffs allege that "[t]here has been an equitable breach in this case that warrants rescission because of issues of impossibility of performance and frustration of purpose." (Doc. 34 ¶ 99.) At the heart of Plaintiffs' impossibility allegations is that Campus Advantage could not safely provide its residents with access to the common areas and services (i.e., the amenities) it promised in the lease because of COVID-19. (*Id.* ¶ 100.) Specifically, Plaintiffs allege that "it was simply not possible for students to fully access common areas and amenities in a prudent manner. [These p]laces [include] the pool, group study lounges, game rooms, exercise center, transit shuttles, and computer labs. . . . [I]t was impossible for Campus Advantage to provide what was bargained for under the [leases]." (*Id.* ¶¶ 104–05.) These impossibility allegations cannot form the basis for rescission because Plaintiffs do not allege that *their* duties under the contract (i.e., paying rent) became "impossible to perform." *Bland*, 206 F. Supp. 2d at 1208 (quoting *Crown Ice*, 174 So. 2d at 617); *see Lawrence v. FPA Villa Del Lago, LLC*, No. 8:20-cv-1517, 2022 WL 344634, at *6 (M.D. Fla. Feb. 4, 2022) (Covington, J.) (granting summary judgment on rescission based on impossibility under very similar facts); *see also Lampo Grp., LLC v. Marriott Hotel Servs., Inc.*, No. 3:20-cv-0641, 2021 WL 3490063, at *7 n.1 (M.D. Tenn. Aug. 9, 2021) ("[T]he party who finds it impossible to perform its obligations under the contract may seek rescission."). If Campus Advantage (the defendant) was seeking rescission here, it could theoretically plead impossibility as a ground—although it would

10

face an uphill road to establish impossibility because Campus Advantage was not prevented from providing access to the common areas and services, it merely decided that course was imprudent in the light of COVID-19.

As to frustration of purpose, Plaintiffs allege that COVID-19 frustrated two essential purposes of the lease agreements. First, Plaintiffs claim one primary purpose of the leases was for Campus Advantage to provide its residents with a "dormitory-style living arrangement" coupled with "a bundled package of amenities," which it could not safely provide during the pandemic. (*Id.* ¶ 106.) When the allegations "support the frustration of the bargained for benefits," the allegations are sufficient for frustration of purpose. *See Bland*, 206 F. Supp. at 1208. Plaintiffs' first allegation—that Defendant's failure to continue providing the bargained for spaces and amenities frustrated the purpose of the lease agreement—is not sufficient to serve as a basis for rescission. The "primary purpose of the lease[s] was to provide [Plaintiffs] with accommodations" and Campus Advantage "clos[ing] or limit[ing] access to amenities in light of the COVID-19 pandemic" did not amount to a frustration of purpose since the amenities were not a "contractual right." *Lawrence*, 2022 WL 344634, at *5; *see Gap Inc. v. Ponte Gadea N.Y. LLC*, 524 F. Supp. 3d 224, 235 (S.D.N.Y. 2021) ("While undeniably unfortunate, the COVID-19 pandemic has not amounted to frustration of the Lease's purpose of Gap operating a retail business at the Premises. Instead, the evidence suggests that Gap has made a business decision to

close its stores. . . .”). This is clear from the lease term stating that Campus Advantage "expressly reserve[d] the right to promulgate additional rules and regulations applicable to the property and to amend or modify any rule or regulation contained herein as [Campus Advantage] from time to time determines to be appropriate.” (*See, e.g.*, Doc. 43-1 at 16 (emphasis omitted).) That term clarifies that, like in *Lawrence*, unfettered access to the spaces and "amenities” is not a "contractual right” here. *See Lawrence*, 2022 WL 344634, at *5. Rather, the primary purpose of the lease agreements to provide living accommodations—and embodied in the contractual right to access to the individual rooms rented—remained intact.

Second, Plaintiffs claim another purpose of the leases was to provide the student-plaintiffs with housing to allow them to easily attend school on campus, which was frustrated because the university campuses were closed and no activities were taking place there due to COVID-19. (*Id.* ¶ 107.) This second frustration allegation is also not sufficient because, again, the central purpose of the lease agreements between Plaintiffs and Campus Advantage was "to provide [Plaintiffs] with accommodations.” *Lawrence*, 2022 WL 344634, at *5; *see also In re Cinemex USA Real Estate Holdings, Inc.*, 627 B.R. 693, 699 (Bankr. S.D. Fla. 2021) (concluding there was no frustration of purpose of a movie theater's lease agreement due to COVID-19 where the central purpose of the lease was to "operate a movie theater,” which continued to be possible despite COVID-19). There was

no contractual right to attend school in the lease agreements and no limitation in Campus Advantage's lease agreements that only students attending those local universities could rent. Thus, although assuming it is true that one of Plaintiffs' desires was to attend school nearby and it was thwarted, it was not disrupted by Campus Advantage's inability to perform its obligations under the lease. There was simply no impossibility of performance by Campus Advantage (as it continued to perform its obligations under the leases). The Court concludes that the Plaintiffs have failed to plead sufficient facts for rescission to support the third rescission element.

The fourth element is that a party seeking rescission rescinded the contract and notified the other party to the contract. *See Bland*, 206 F. Supp. 2d at 1206. Campus Advantage argues that Plaintiffs fail to allege that Nassar abandoned the premises or provided any type of notice to Campus Advantage of rescission. (Doc. 43 at 8.)

The Court agrees as to this deficiency regarding Nassar. There are no allegations that Nassar rescinded his lease or that he provided Campus Advantage with "proper notice" as to his decision to rescind. *Bland*, 206 F. Supp. 2d at 1208 (citing *Frank Griffin Volkswagen, Inc. v. Smith*, 610 So. 2d 597, 605 (Fla. 1st DCA 1992) (Ervin, J., concurring in part)). Plaintiffs do not challenge this conclusion or point the Court to any allegations in the Amended Complaint establishing that Nassar rescinded his lease and notified Campus Advantage about it. (Doc. 51 at 5–6.) On the contrary, the Amended Complaint

Case 8:20-cv-02651-KKM-TGW   Document 106   Filed 03/01/22   Page 14 of 27 PageID 3052

itself indicates that, rather than rescind the contract, Nassar met his contractual obligations (i.e., rent payments) through the end of his lease term. (Doc. 34 ¶¶ 46–48.) Plaintiffs argue that Campus Advantage can "hardly complain . . . it did not receive individual notice" after the mass email went out to its residents on March 19, 2020, stating that Campus Advantage would not "release residents from lease obligations at this time." (Doc. 51 at 5–6.) But this misses the point. There are no allegations that Nassar rescinded his lease or provided notice to Campus Advantage of his decision to rescind, which is a required element for a rescission claim. Plaintiffs fail to point the Court to any authority for the proposition that an element of a claim need not be alleged because, in the judgment of the plaintiff, meeting the element would be "futile." (Doc. 51 at 6.) Therefore, on these grounds alone, the Court dismisses the rescission claim as to Nassar (and his mother Pomeroy).

The fifth rescission element is that the moving party received benefits from the contract and offers to restore these benefits to the party furnishing them if restoration is possible. *See Bland*, 206 F. Supp. 2d at 1209; *see also Crown Ice*, 174 So. 2d at 617 (party seeking rescission should offer to restore benefits received to the party furnishing them). Campus Advantage argues that Plaintiffs fail to allege they received any benefit from the contract in the Amended Complaint or that Plaintiffs merely recite the elemental definition without any indication as to whether the parties could be equitably restored to

14

their original positions. (Doc. 43 at 9–10.) The Amended Complaint alleges that "[t]his case is suitable for rescission because the parties can be equitably restored to their original position or, if that result would not be equitable, a balance of the equities can otherwise be achieved." (Doc. 34 ¶ 109.) While it is true that "Florida law allows rescission where restoration to the status quo is impossible" (and that appears to be the case here), *Bland*, 206 F. Supp. 2d at 1208 (citing *Braman Dodge, Inc. v. Smith*, 515 So. 2d 1053, 1054 (Fla. 3d DCA 1987)), the Plaintiffs must still plead factual allegations to support their legal conclusions to survive a motion to dismiss. And whether the benefits that Defendant receives under the leases are so "obvious" that they do not need to be pled in the Amended Complaint is not the legal standard. (Doc. 51 at 7.) The Court is unaware of any obviousness exception to the pleading standards under *Iqbal* and *Twombly*.

The sixth rescission element is that a party asserting a claim in equity must demonstrate the absence of a remedy at law. *See Bland*, 206 F. Supp. 2d at 1209; *see also Collier v. Boney*, 525 So. 2d 971, 972 (Fla. 1st DCA 1988) ("[A] fundamental requirement necessary for rescission of a contract is that the moving party has no adequate remedy at law."). There is only one paragraph in the Amended Complaint that relates to this element. (Doc. 34 ¶ 110 ("To the extent no remedy at law is available, rescission is appropriate.") (emphasis omitted).) While this is a conclusory allegation, stating a claim for rescission in the alternative to a breach of contract claim is sufficient to satisfy the no-adequate-legal-

15

remedy element. *See, e.g., Lawrence v. FPA Villa Del Lago, LLC*, No. 8:20-cv-1517, 2021 WL 2144758, at *4 (M.D. Fla. March 4, 2021) (Covington, J.); *Argos Global Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1093 (S.D. Fla. 2020) (Altonaga, J.).

Therefore, the Court grants Campus Advantage's motion to dismiss as to Plaintiffs' rescission claim because the Amended Complaint does not allege the third and fifth rescission elements. In addition, as to Nassar (and his mother Pomeroy), the Amended Complaint is deficient as to element four and the Court dismisses Count I as to these two plaintiffs on that basis as well.

### B. Count II: Breach of Contract

To establish a claim for breach of contract, Florida law requires that Plaintiffs establish: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019) (quotation and emphasis omitted); *see, e.g., Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

Campus Advantage argues that Plaintiffs' Amended Complaint fails to specifically allege the contract term Campus Advantage breached when they were unable to safely provide the services and amenities. (Doc. 43 at 11.) Campus Advantage further argues that Plaintiffs fail to allege any actual damages resulting from the breach of contract. (*Id.*)

16

The Court agrees with Campus Advantage that Plaintiffs fail to plead any actual damages in their Amended Complaint. *See Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1300 (M.D. Fla. 2009) (Fawsett, J.) ("Under Florida law, damages are an essential element of an action for breach of contract."); *see also People's Tr. Ins. Co. v. Alonzo-Pombo*, 307 So. 3d 840, 843 (Fla. 3d DCA 2020) ("As [the plaintiff] has not alleged it has or will suffer any damages, the breach of contract count cannot be sustained."). None of the five paragraphs in Count II of Plaintiffs' Amended Complaint allege that Plaintiffs suffered damages from the purported breach. (Doc. 34 ¶¶ 111–15.) The Plaintiffs therefore did not plead a breach of contract claim because they omitted any allegations of damages. As discussed below, even if Plaintiffs had properly alleged damages, the provisions of the leases that Plaintiffs allege were breached were not.

Additionally, in Count II of the Amended Complaint, Plaintiffs reference two provisions in the leases to support their allegation that Campus Advantage "breached the contract because they [were] unable to safely provide these services and amenities" to Plaintiffs. (Doc. 34 ¶ 115.) The first provision is the paragraph in the "Lease Agreement" section labeled "Premises," which states that the residents have a "nonexclusive right to use the shared living areas in the unit or suite . . . all subject to and in accordance with the provisions of this Lease." (*See, e.g.*, Doc. 43-2 at 2.) And paragraph thirty-eight of the "Rules and Regulations" section labeled "Amenities," details several specific amenities

"made available by Landlord for use by residents" including the computer lab, fitness center, tanning room, and grills. (Doc. 43-1 at 15; Doc. 43-2 at 17; Doc. 43-3 at 17.) The Court agrees with Plaintiffs that the leases "contemplate" amenities in the provisions above. However, the express provision at the end of the "Rules and Regulations" section in all capital letters explicitly states: "Resident[s] also acknowledge[] that Landlord expressly reserves the right to promulgate additional rules and regulations applicable to the property *and to amend or modify any rule or regulation* contained herein as Landlord from time to time determines to be appropriate." (Doc. 43-1 at 16; Doc. 43-2 at 18; Doc. 43-3 at 18 (emphasis added).) Given this express provision reserving the right to "amend or modify" any other rule or regulation by Campus Advantage, including access to the "Amenities," the Plaintiffs also fail to allege a "material breach" of the leases by pointing to more general provisions detailing the list of amenities offered at the Campus Advantage facilities. *Marchisio*, 919 F.3d at 1313; *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 28, at 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails.").

Thus, the Court also grants Campus Advantage's motion to dismiss as to Plaintiffs' breach of contract claim.

18

### C. Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

Under Florida law, every contract includes the implied covenant of good faith and fair dealing. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *see Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997). But a breach of the covenant does not create an independent cause of action. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). "Only when a breach of an express term of the contract is pled can a claim for breach of the implied covenant of good faith and fair dealing be maintained." *Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 F. App'x 865, 878 (11th Cir. 2018) (citing *Centurion*, 420 F.3d at 1152); *see Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (Antoon, J.) (noting that a claim for breach of the implied covenant of good faith and fair dealing must "relate to the performance of an express term of the contract[. I]t is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements").

Here, Plaintiffs make three separate factual allegations in their Amended Complaint about how Campus Advantage supposedly breached the implied covenant of good faith and fair dealing—but none of these three identifies a specific contractual provision from the leases to support the claim. (Doc. 34 ¶ 118.) Such a free floating implied-covenant-of-good-faith-and-fair-dealing claim fails to meet the pleading

19

standard. *See Lawrence*, 2021 WL 2144758, at *4–5 (dismissing a similar implied-covenant claim for failing to identify an express contract provision).

Thus, the Court dismisses Plaintiffs' claim for breach of the implied warranty of good faith and fair dealing.

### D. Count IV: Unjust Enrichment

The "essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that made it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). "[W]here there is an express contract between the parties, claims arising out of the contractual relationship will not support a claim for unjust enrichment." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) (King, J.); *see also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").

While it is true that parties are free to advance claims in the alternative, *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013) (Chappell, J.), Plaintiffs do not plead their unjust enrichment claim in the alternative, (Doc. 34 ¶¶ 120–

25). Further, a claim for breach of contract is not the same as a claim asserting that the contract governing a dispute is invalid. *See, e.g.*, *William Ryan Homes Fla., Inc. v. Whitney Nat. Bank*, No. 8:12-cv-1575, 2012 WL 4328769, at *2–5 (M.D. Fla. Sept. 20, 2012) (Covington, J.) (dismissing with prejudice an unjust enrichment claim but allowing a breach of contract claim to proceed where there was no dispute that a valid contract existed between the parties and the dispute arose out of the contractual relationship). Plaintiffs argue their rescission claim constitutes a dispute as to the validity of the lease agreements. (Doc. 51 at 13.) But Plaintiffs do not plead that the contract is invalid in their rescission claim. (Doc. 34 ¶¶ 96–110.) And even assuming that a rescission claim somehow automatically constitutes a claim that a contract is not valid for purposes of an unjust enrichment claim, the Court has already dismissed Plaintiffs' rescission claim.

Because Plaintiffs failed to plead their unjust enrichment claim in the alternative and failed to allege the lease contracts are invalid, the Court also dismisses Plaintiffs' unjust enrichment claim.

### E. Count V: Conversion

"Under Florida law, conversion is an 'unauthorized act which deprives another of his property permanently or for an indefinite period of time.'" *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (Honeywell, J.) (quoting *Fogade v. ENB Revoacable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001)). "In

Florida, the conversion of money is treated differently than traditional conversion." *Robinson v. Frese Hansen Anderson Anderson Heuston & Whitehead P.A.*, No. 6:12-cv-1064, 2015 WL 12843854, at *6 (M.D. Fla. March 31, 2015) (Mendoza, J.). The elements of a cause of action for the conversion of money are: "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013) (Steele, J.) (quotation omitted). The first element—specific and identifiable money—requires that "the money is deposited into an account designed to keep the money segregated and identifiable, such as a trust or escrow account, or where there is an obligation or fiduciary duty to keep money segregated." *Robinson*, 2015 WL 12843854, at *7 (quotation omitted); *Indus. Park*, 960 F. Supp. 2d at 1366 ("In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue.").

Here, Plaintiffs do not allege facts to support the specific-and-identifiable-money element. There are no allegations—and, given the alleged facts, there is no reason to believe—that Campus Advantage kept the money Plaintiffs paid to it from March 2020–July 2020 separate, such as in a trust or an escrow account, or that Campus Advantage had any "obligation" to do so. *Indus. Park*, 960 F. Supp. 2d at 1366.

Thus, the Court dismisses Plaintiffs' conversion claim.

### F. Count VI: Money Had and Received

"Under Florida law, 'money had and received' is synonymous with unjust enrichment and restitution.'" *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1317 n.13 (11th Cir. 2021) (quoting *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (Moreno, J.)). "Florida law recognizes the general rule that 'an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion, or undue advantage." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007) (Cohn, J.) (quotation omitted). Just like with unjust enrichment, a "plaintiff cannot pursue an action for money had and received when there is an express contract." *Voltage Pay Inc. v. Turin Consulting LLC*, No. 8:12-cv-00304, 2013 WL 12205710, at *3 (M.D. Fla. 2013) (Scriven, J.).

For the same reasons Plaintiffs' unjust enrichment claim fails, this "synonymous" claim fails as well. *Pincus*, 986 F.3d at 1317 n.13; *see Virgilio v. Ryland Grp., Inc.*, No. 6:08-cv-815, 2009 WL 320857, at *6 (M.D. Fla. Feb. 9, 2009) (Presnell, J.) ("The reasoning applicable to Plaintiffs' claim for unjust enrichment applies equally to Plaintiffs' claim for money had and received."). Further, Plaintiffs fail to allege that Campus Advantage obtained the standard monthly rent payments through fraud, imposition,

extortion, or undue advantage. *Berry*, 497 F. Supp. 2d at 1369–70 (finding a claim for money had and received insufficiently pleaded where the facts did not support any "fraud or imposition through which the money was obtained"). The only substantive paragraph under Count VI states that Campus Advantage "received money in the form of room, board, and fee payments that was intended to be used for the benefit of Plaintiffs and the Class. Those fees, however, were not used for the benefit of Plaintiffs and the Class, and Campus Advantage has not given back or refunded the wrongfully obtained money and fees to Plaintiffs and the Class." (Doc. 34 ¶ 133.) This allegation does not plausibly allege that the rent money Plaintiffs paid to Campus Advantage was obtained by mistake, fraud, imposition, extortion, or undue advantage. *See Berry*, 497 F. Supp. 2d at 1370.

The Court therefore dismisses Plaintiffs' money had and received claim.

### G. Count VII: Florida Consumer Collection Practices Act

In Count VII, the Amended Complaint alleges that Campus Advantage violated two provisions of the FCCPA: Sections 559.72(7) and 559.72(9), Florida Statutes. Section 559.72(7) prohibits persons from "[w]illfully communicat[ing] with the debtor . . . with such frequency as can reasonably be expected to harass the debtor[,] . . . or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor." "[T]he statute's use of the word 'willful' means that the calls must be done consciously, and thus that the statute concerns both 'the purpose as well as the frequency of the creditor's calls.'"

24

*Harrington v. Roundpoint Mortg. Serving Corp.*, No. 2:15-cv-322, 2017 WL 1378539, at *10 (M.D. Fla. April 11, 2017) (Chappell, J.) (quoting *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st DCA 1977)). The second provision, § 559.72(9), prohibits persons from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist." "[A] party must allege knowledge or intent by the debt collectors in order to state a cause of action" under § 559.72(9). *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (Dimitrouleas, J.) (quotation omitted).

Plaintiffs fail to allege any facts—such as the specific substance of any call or how those calls were harassing or that Campus Advantage knew the debt was illegitimate— supporting their conclusory legal allegations that Campus Advantage violated Section 559.72(7) or Section 559.72(9). Instead, Plaintiffs assert two paragraphs of bare legal conclusions in their Amended Complaint, (Doc. 34 ¶¶ 137–38), which are merely "[t]hreadbare recitals of the elements of a cause of action" that "do not suffice." *Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." (quotation omitted)).

Thus, the Plaintiffs' FCCPA claim in Count VII is dismissed.

### H. Count X: Spatz Plaintiffs' FCCPA Claim

Section 559.72(18), Florida Statutes, prohibits a person from "[c]ommunicat[ing] with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt." "[Section] 559.72(18) generally prohibits a person who is attempting to collect on a debt from communicating with the debtor if the person knows that the debtor is represented by an attorney with respect to that debt." *Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1347 (M.D. Fla. 2015) (Honeywell, J.); *Bray v. PNC Bank, N.A.*, 196 F. Supp. 3d 1282, 1287 (M.D. Fla. 2016) (Mendoza, J.) ("Actual knowledge is required to prove violations of [Section 559.72(18)]." (quotation omitted)).

Once again, there are no allegations in the Amended Complaint that Campus Advantage communicated with the Spatz Plaintiffs with the knowledge that they were represented by counsel. The Amended Complaint has a single conclusory allegation that Campus Advantage "attempt[ed] to communicate directly with Spatz Plaintiffs when Defendants knew that the Spatz Plaintiffs were represented by an attorney." (Doc. 34 ¶ 155.) Without more, Count X simply fails to meet the pleading standards that require Plaintiffs to go beyond bare assertions and legal conclusions and to provide supporting factual allegations. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Thus, the Spatz Plaintiffs' FCCPA claim in Count X is dismissed.

## IV.   CONCLUSION

In sum, Campus Advantage's motion to dismiss is granted because Plaintiffs' claims fail to plead sufficient facts that make it plausible that they are entitled to the relief sought. Because this is the first order dismissing the operative pleading, Plaintiffs may file a second amended complaint if they wish to proceed in this case.

Accordingly, the following is **ORDERED:**

1.   Defendant's Motion to Dismiss (Doc. 43) is **GRANTED**.

2.   Plaintiffs' Motion for Class Certification (Doc. 69), Defendant's Motions for Summary Judgment (Doc. 87; Doc. 97), and Plaintiffs' related Motion for Leave to File a Sur-Reply to Defendant's Reply in Support of Summary Judgment (Doc. 103) are **DENIED as moot**.

3.   Plaintiffs may file an amended complaint on or before **March 15, 2022**. Ten days after Defendant answers any amended complaint, the parties are directed to file an amended case management report.

**ORDERED** in Tampa, Florida, on March 1, 2022.

Kathryn Kimball Mizelle
United States District Judge